WICKER, Judge.
Pepsi-Cola General Bottlers, Inc. and Gulf South Beverages, Inc. appeal a judgment in favor of the plaintiff, Mosel Armstrong. The issues are whether or not Pepsi-Cola and Gulf South negligently allowed glass to enter a bottle of Pepsi, injuring Armstrong, and whether or not the damage award of $3,500.00 was excessive. We affirm.
Armstrong purchased a ten-ounce bottle of Pepsi at a Charter Marketing Company convenience store. He opened and drank the Pepsi, testimony varying as to whether he drank it inside or outside the store. He then showed Charter’s employees that pieces of glass were in the bottom of the bottle. Armstrong sued Pepsi-Cola and Charter, and he later added Gulf South. The judge dismissed Charter and found both Pepsi-Cola and Gulf South liable to Armstrong. He reasoned:
Plaintiff gives the impression that he is telling a large, whopping story. However, in my humble opinion, plaintiff is expressing himself according to his station in life. It should be borne in mind that Armstrong does not have the formal education which we have had, and it is hard to judge him on our set standards. Mr. Armstrong does not have the innate ability to express himself in the proper manner. Cross examination of him is devastating. It really is not his fault. This court, in order to do justice, must extract that which is real from that which is unreal. Armstrong really did not make a good witness. However, he does have a point, and that point is he drank a drink with glass in the bottle, and a piece of the glass fragment passed through is [sic] digestive system.
[[Image here]]
There is no doubt in my mind after hearing all which I have heard from the witness stand and piecing together all matters that:
1. Plaintiff purchased the drink;
2. Plaintiff drank the drink;
Plaintiff observed, along with a Charter employee, a foreign substance at the bottom of the Pepsi;
The police were called;
Plaintiff did not see a doctor immediately but did subsequently see a doctor;
6. All doctors found no objective symptoms of damage;
7. Cut glass entered his digestive system and subsequently was expelled;
8. The foregoing traumatic experience is worth something.
We have reviewed the testimony and documentary evidence and do not believe that the judge was clearly wrong in his decision. The testimony and some of the documents at times conflicted, and the testimony of Armstrong and the other witnesses differed in some respects.
Armstrong testified that he bought and paid for the Pepsi, opened it, started drinking it, and immediately realized he had swallowed something in the bottle. He coughed and spit up all over the floor in an attempt to bring up whatever he had swallowed. He discovered pieces of glass in the bottom of the almost-empty bottle; and he showed them to the cashier, Joanne Smith. When Charter’s manager wanted to confiscate the bottle as evidence, Armstrong returned with the police. Sgt. Malcolm Vana-cor came and advised Charter that, since Armstrong had paid for the Pepsi, it was his right to keep the bottle. Armstrong asked Vanacor to keep the Pepsi bottle for him.
*69 Armstrong said the next day he passed glass in his stool, and the glass was entered into evidence. He also had slight rectal bleeding. He went to the emergency room the day after the incident. After that, he saw one doctor once or twice and the other about seven times; however, he didn’t know one doctor from the other and couldn’t say which was which. He had testified in his previous deposition to having seen one of the doctors every other day for eight months and if the doctor testified differently, the doctor was mistaken. He had papers to prove the extent of his doctor visits, but he gave them to his attorney. He still had some pain in his throat, but he was not under the care of any doctor because he could not afford it. He took Pepto-Bismol for the relief of his symptoms.
Armstrong is an illiterate, sixty-four years old at the time of the trial. We have paraphrased his testimony to make it comprehensible. However, his actual testimony was frequently confused and almost always inarticulate. The judge took over questioning Armstrong several times when it was clear Armstrong did not understand the questions and/or was not able to answer the questions. The transcript indicates that some of his testimony was inaudible, and at one point the judge referred to it as gibberish.
Joanne Smith was subpoenaed but twice failed to appear to testify. The judge issued an attachment for her appearance, and the parties were eventually able to take her deposition and admit it into evidence. She testified that she was a cashier at the time of the incident. Armstrong came into the store and bought a Pepsi. He took it outside to drink, within her sight. At one point he left and came back, but she could not recall whether it was before or after he complained about the glass. He brought in the bottle, complained that he had swallowed glass and spit up blood, and showed her the pieces of glass in the bottom. She saw the glass, and she noticed that the rim of the bottle was chipped or broken. However, in an earlier statement, she noted that the bottle was not broken or chipped. She did not see him spit up inside the store, but she couldn’t be sure what had happened outside. Armstrong returned after leaving with Sgt. Vanacor, who made her return the bottle to Armstrong. Armstrong told her he was going to the hospital and asked if she would be responsible for the bill. At one point, either the doctor or the hospital called to inquire about responsibility for the bill. Since the incident, Armstrong asked her if she would be his witness if there was a trial.
Sgt. Vanacor testified that he was called to Charter by Armstrong and that he saw the glass in the bottom of the bottle. However, he did not see any broken area on the top of the bottle. He had held the bottle as evidence for a while, but it had been accidentally thrown away.
The medical records indicate the following treatment and/or consultations:
April 5, 1986 — St. Charles Hospital Emergency Room for complaint of swallowing and passing glass; denies rectal bleeding; declines rectal exam April 25, 1986 — St. Charles Hospital Emergency Room for complaint of pain in abdomen, left neck, and radiating down left arm, and a feeling of foreign body in left throat; throat normal with no abrasions; recommended Maalox and referred to ear, nose, and throat May 2, 1986 — Dr. Hart examined and recommended fiberoptic exam May 23, 1986 — South Louisiana Medical Center Emergency Room for complaint of something in throat; X-ray revealed no foreign body; referred to surgery clinic and given naprosyn[?]
June 3, 1986 — South Louisiana Medical Center surgery clinic for complaint of foreign body in left side of throat; reported having passed glass June 17, 1986 — South Louisiana Medical Center surgery clinic; endoscopy performed; normal; referred to ear, nose, and throat
August 22, 1986 — South Louisiana Medical Center for complaint of foreign body in left hypopharynx; had previous laryn- *70 goscopy; symptoms improved; normal exam; return in 2 months
October 17, 1986 — South Louisiana Medical Center; next visit [?]; instructed and expressed understanding
Richard Vallette, M.D., a general surgeon, stated that he treated Armstrong twice, on June 3 and 17, 1986, for a complaint of a “catch” in his throat as a result of swallowing glass. He examined the pharynx and performed an endoscopy (technically, an esophagogastroduodenoscopy) to examine the area from the mouth to the duodenum. He found no abnormalities referable to a foreign body lodged in the upper gastrointestinal tract. He referred Armstrong to the ear, nose, and throat clinic, since the endoscopy would not rule out a foreign body in the larynx. He did state that it would be highly unlikely that, having swallowed glass, Armstrong would still complain of pain or glass lodged in the throat almost two months later.
John C. Hart, M.D., an ear, nose and throat specialist, testified that he saw Armstrong only once. He examined the throat and larynx and was unable to see any problem. Since he couldn’t get a complete look at this area, he recommended a followup laryngendoscopy; however, Armstrong didn’t return for this test. He testified, “I have never in my experience seen a foreign body remain in the throat for an extended period of time like this without causing serious symptoms”, such as severe pain, high fever, or infection. A foreign body might cause discomfort for a week to ten days, but not for six months.
Pepsi Cola and Gulf South claim two errors: (1) manifest error in finding them negligent for Armstrong’s “alleged incident”; and (2) excessive general damages.
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... Where there are two permissible views of the evidence, the factfinder’s choice between them' cannot be manifestly erroneous or clearly wrong_ In applying the manifestly erroneous — clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo ....
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.... Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. Esco, 549 So.2d 840, 844-45 (La.1989) (emphasis added). Accord: White v. McCoy, 552 So.2d 649 (La.App.2d Cir.1989).
The medical records prove that Armstrong sought medical help for his injury on at least eight occasions. Despite the lack of documentation, the independent testimony of Smith, the cashier, proves that Armstrong must have gone to the emergency room right after the incident, since either the hospital or a doctor called the store inquiring about responsibility for the bill. We do find that Armstrong’s testimony, in the record, is inconsistent, confused, and confusing. Nevertheless, the judge took this into consideration and carefully explained why he ruled in Armstrong’s favor despite the quality of his testimony. *71 We cannot say he was clearly wrong in his resolution of these factual questions.
This same deference should be accorded the damage award. The judge has very great discretion with regard to awards for pain and suffering; and unless he has abused that discretion, a reviewing court should not disturb his award. Reck v. Stevens, 373 So.2d 498 (La.1979); Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5th Cir.1988), writ den. 530 So.2d 569 (La.1988).
Armstrong testified to vomiting and rectal bleeding, followed by months of discomfort in his throat (a “catch” in the throat). He visited a doctor or the hospital at least eight times by documented evidence and perhaps more. He underwent an endoscopy, a procedure for which it is necessary to tranquilize the patient. We cannot say that .the judge abused the very much discretion afforded him in awarding $3,500.00 in general damages as well as medical expenses. Two of the cases cited by Pepsi Cola and Gulf South, Stewart v. Barq’s Beverages, Inc., 442 So.2d 799 (La.App. 4th Cir.1983), and Wright v. Ouachita Coca-Cola Bottling Co., 415 So.2d 309 (La.App. 2d Cir.1982), involve awards of $2,685.00 and $2,000.00 respectively for the ingestion of a contaminated soft drink. We do not consider that these awards are substantially lower than that in the instant case and decline to alter the amount of damages allowed.
The judgment of $3,500.00 in general damages plus medical expenses, interest, and costs in favor of Mosel Armstrong and against Pepsi Cola General Bottlers, Inc. and Gulf South Beverages, Inc. is affirmed. Pepsi Cola and Gulf South must pay the costs of this appeal.
AFFIRMED.